**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

VIFOR (INTERNATIONAL) AG and AMERICAN REGENT, INC.,

*Plaintiffs*,

v.

ORBICULAR PHARMACEUTICAL TECHNOLOGIES PVT. LTD.,

*Defendant*.

§ § § § § § § § § § § § §

Civil Action No. 25-540

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Vifor (International) AG and American Regent, Inc. (collectively "Vifor") brought this Hatch-Waxman litigation against defendant Orbicular Pharmaceutical Technologies Pvt. Ltd. ("Orbicular"). On May 2, 2025, Vifor filed its complaint in this district, alleging that Orbicular has infringed certain patents by virtue of Orbicular's submission of an Abbreviated New Drug Application ("ANDA"). Orbicular has moved to transfer this litigation to the District Court for the District of New Jersey. Dkt. No. 14. The motion will be granted.

## I. Background

Orbicular has applied for approval of ANDA No. 212136 ("Orbicular's ANDA"). Following notice of Orbicular's ANDA filing, Vifor initiated this litigation. Vifor has alleged that venue is proper in this district because, *inter alia*, "Orbicular is a foreign company not residing in any United States judicial district and may be sued in any judicial district." Dkt. No. 1 at ¶ 13 (citing 28 U.S.C. § 1391(c)(3)). Orbicular agrees that it is a foreign company without a presence

in the United States and that it has applied for approval of an ANDA, seeking to market a generic version of Vifor's branded ferric carboxymaltose injection. Dkt. No. 15 at 2–3.

Orbicular explains that Vifor's complaint identifies six related cases. Five of those cases are proceeding in the United States District Court for the District of New Jersey. In the sixth case, which is proceeding in this district, the defendants have sought to have the case transferred to the District of New Jersey. *Id.* at 2. Orbicular further explains that much litigation has taken place in the cases pending in the District of New Jersey, with certain of these cases having already been tried. *Id.* at 3. Moreover, Orbicular identifies the asserted patents, file histories, claim construction issues, prior art references, branded drug's New Drug Application, and product labels as areas of overlap between the cases pending in the District of New Jersey and this case. *Id.* at 6. Orbicular adds that third party MSN Life Sciences Private Limited will be supplying Orbicular with the active pharmaceutical ingredient ("API") used in Orbicular's ANDA product and that one of the defendants in the litigation in the District of New Jersey is MSN Pharmaceuticals Inc., which is an agent for MSN Life Sciences Private Limited. *Id.* at 3; *see also* Dkt. No. 15, Exh. A (Letter of Authorization from MSN Life Sciences Private Limited to Orbicular authorizing the FDA to review information in MSN Life Sciences Private Limited's Drug Master File when evaluating Orbicular's ANDA).

## II. Legal Standard

Under 28 U.S.C. § 1404(a), a district court may, for the convenience of parties and witnesses, "transfer any civil action to any other district or division where it might have been brought" if doing so would be "in the interest of justice." In patent cases, the Federal Circuit has instructed district courts to apply the law of the regional circuit, here the Third Circuit, in evaluating motions to transfer. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021).

The Third Circuit has explained that "[t]he burden of establishing the need for transfer . . . rests with the movant," and that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). In evaluating a motion for transfer, the court must first determine "whether the case could have been brought in the district to which the movant wishes to transfer." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, No. 21-1365, 2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022) (citing *Jumara*, 55 F.3d at 878). If venue would have been proper in that district, the court must then evaluate whether the public and private interest factors set forth in *Jumara* favor transfer. *Id.* at *3–4. The defendant must show that "the balance of convenience of the parties is *strongly* in favor" of transfer in order to prevail on its motion. *Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 21-01403, 2022 WL 1063845, at *2 (D. Del. Apr. 8, 2022) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); emphasis in the original).

**III. Discussion**

Orbicular's primary argument for why its motion to transfer should be granted is that it will serve the interests of judicial economy to have this case proceed in the district where related cases, namely those cases involving the MSN entities, are proceeding. Vifor disputes that the judicial economy factor is sufficient to outweigh the deference that should be accorded to Vifor's choice of forum. Therefore, whether to transfer this case primarily turns on how significant the judicial economy factor is having this case proceed in the same forum as the related cases. For completeness, however, I will address the other *Jumara* factors below as well.

**a. Proper Venue**

The first issue to resolve is whether this lawsuit could have been filed in the United States District Court for the District of New Jersey. Orbicular argues that the court in the District of New

Jersey would have had subject matter jurisdiction over this case given that it is a federal court and that this case is a patent case. Dkt. No. 15 at 6. Orbicular also argues that because Orbicular is a foreign company, venue for this case would have been proper in any district court. *Id.* Vifor does not dispute that this case could have been brought in the District of New Jersey. Dkt. No. 23 at 3 n.3. Accordingly, I conclude that the District of New Jersey would be a proper venue.

**b. Private Interest Factors**

I next address the private interest factors articulated by the Third Circuit in *Jumara*. The private interest factors include (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, to the extent that they may be unavailable for trial in one of the forums; and (6) the location of books and records, to the extent that they could not be produced in the alternative forum. *Jumara*, 55 F.3d at 879.

**i. Plaintiffs' Choice of Forum**

The first private interest factor is the plaintiff's choice of forum. A plaintiff's choice to sue in a particular jurisdiction is a "paramount consideration" in the section 1404(a) analysis, and thus it weighs "strongly" against transfer, particularly if the plaintiff elects to sue in its home jurisdiction. *NXP USA, Inc. v. IMPINJ, Inc.*, No. 19-1875, 2020 WL 5665257, at *2 (D. Del. Sept. 23, 2020) (quoting *Shutte*, 431 F.2d at 25). Here, however, Vifor (International) AG is a Swiss entity with its principal place of business in Switzerland, and American Regent, Inc., is a New York corporation with its principal place of business in New York. Dkt. No. 1 at ¶¶ 2, 4. As other courts have explained, the plaintiff's choice of forum should be given reduced weight when the plaintiff does not have ties to Delaware. *Selene Commc'n Techs., LLC v. Trend Micro Inc.*, No. 14-435, 2015 WL 237142, at *1 (D. Del. Jan. 16, 2015) ("[T]he deference to be given to [the

plaintiff's] choice of forum is reduced because [the plaintiff's] principal place of business is in Shaker Heights, Ohio."); *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222–23 (Fed. Cir. 2011) (holding that a Delaware court "placed far too much weight on the plaintiff's choice of forum" in a case in which the plaintiff was based in Bermuda and the case had no connection to Delaware other than that Delaware was the place of the defendant's incorporation). Accordingly, this factor weighs against transfer, but not as strongly as it would if Vifor (International) AG or American Regent, Inc., had a presence in Delaware.

**ii. Defendant's Preferred Forum**

The second private interest factor is the defendant's preferred forum. Orbicular represents that it would prefer to litigate this case in the District of New Jersey. Dkt. No. 15 at 12. Although the defendant's choice of forum is typically given less deference than the plaintiff's choice, *see Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, No. CV 14-874, 2015 WL 4036951, at *3 (D. Del. July 1, 2015), *report and recommendation adopted*, 2015 WL 4477699 (D. Del. July 22, 2015), this factor still favors transfer, *see Take2 Techs. Ltd. v. Pac. Biosciences of California, Inc.*, No. CV 22-1595, 2023 WL 4930359, at *5 (D. Del. Aug. 2, 2023).

**iii. Where the Claim Arose**

The third private interest factor is where the plaintiff's claim arose. In analyzing this factor in patent cases, courts typically focus on "the location of the production, design and manufacture of the accused instrumentalities." *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 439 (D. Del. 2015). "However, ANDA cases are based primarily on an act of constructive infringement—namely, the submission to the FDA of an application to sell a generic version of a drug prior to the expiration of the relevant patents. In such cases, our Court and other courts have tended to look to the forum where the ANDA submission itself was prepared

and submitted." *Abbott Lab'ys v. Roxane Lab'ys, Inc.*, No. CIV.A. 12-457, 2013 WL 2322770, at *19 (D. Del. May 28, 2013), *report and recommendation adopted*, 2013 WL 12173929 (D. Del. June 18, 2013) (citations omitted). Neither party discusses where the preparation or submission of Orbicular's ANDA occurred, so I will treat this factor as neutral.

**iv. Convenience of the Parties**

The fourth private interest factor is the convenience of the parties. With respect to this factor, the court must consider (1) the parties' physical locations; (2) "the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes"; and (3) "the relative ability of each party to bear these costs in light of its size and financial wherewithal." *ANI Pharms., Inc. v. Method Pharms., LLC*, No. 17-1097, 2019 WL 176339, at *8 (D. Del. Jan. 11, 2019) (quoting *MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017)). Orbicular argues that this factor is neutral because the parties each have sufficient resources to litigate in either the District of Delaware or the District of New Jersey. Dkt. No. 15 at 13. Vifor does not dispute that representation. *See generally* Dkt. No. 23. Accordingly, this factor is neutral.

**v. Convenience of the Witnesses**

The fifth private interest factor is the convenience of the witnesses, particularly if some of the witnesses would be unavailable for trial in one of the districts. Orbicular represents that the District of New Jersey will be equally as convenient for the witnesses as the District of Delaware. Dkt. No. 15 at 13. Vifor does not dispute that representation. *See generally* Dkt. No. 23. Accordingly, this factor is neutral.

**vi. Location of Books and Records**

The sixth private interest factor is the location of books and records, to the extent that they could not be produced in the alternative forum. Orbicular represents that evidence will be equally as convenient to produce in the District of New Jersey as it will be to produce in the District of Delaware. Dkt. No. 15 at 13. Vifor does not dispute that representation. *See generally* Dkt. No. 23. Accordingly, this factor is neutral.

**c. Public Interest Factors**

The public interest factors include (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the degree of court congestion in the two forums; (4) the local interest in deciding local controversies at home; (5) the public policies of the forums; and (6) in diversity cases, the familiarity of the trial judge with the applicable state law. *Jumara*, 55 F.3d at 879–80.

**i. Enforceability of the Judgment**

The first public interest factor is the enforceability of the judgment. Orbicular acknowledges that any judgment entered in this case would be equally enforceable regardless of which forum is chosen. Dkt. No. 15 at 10. Vifor does not dispute that conclusion. *See generally* Dkt. No. 23. Accordingly, this factor is neutral.

**ii. Practical Considerations**

The second public interest factor relates to practical considerations that could make the trial easy, expeditious, or inexpensive. Orbicular argues that transferring this case to the District of New Jersey will minimize costs and eliminate duplicative litigation, citing *In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006), for the proposition that "[a]djudicating almost identical issues in separate fora would waste judicial resources."

Orbicular notes that there have been five related cases filed in the District of New Jersey, which are at more advanced stages than this case,[1] and a sixth case that was filed in the District of New Jersey on April 25, 2025, i.e., at around the time this case was filed. Dkt. No. 15 at 2; *id.* at n.2. Orbicular focuses on the cases with the most overlapping factual issues, which is the litigation with MSN Pharmaceuticals Inc. and MSN Life Sciences Private Limited as defendants ("MSN litigation").

Orbicular argues that the overlap between this case and the MSN litigation includes the asserted patents, claim construction issues, prior art, Vifor's New Drug Application, and product labels. *Id.* at 7. Orbicular argues that the MSN litigation has additional overlapping features with this case, because the Active Pharmaceutical Ingredient ("API") that will be used in Orbicular's ANDA product will be provided by MSN Life Sciences Private Limited, which is a named defendant in Vifor's April 25, 2025, action and which has MSN Pharmaceuticals Inc., another named defendant, as its agent. *Id.* Orbicular argues that the common API is especially relevant because one of the patents asserted in this litigation is directed to the API. *Id.* Given the supplier relationship, Orbicular expects that this case will involve many of the same documents and witnesses as the MSN litigation. *Id.* at 8.

Vifor responds that there is also litigation pending in the District of Delaware against another defendant and that it intends to file a second lawsuit against Orbicular in the District of Delaware, so litigation will be pending in both forums regardless of whether this case is transferred. Dkt. No. 23 at 7. Therefore, Vifor concludes, transfer cannot entirely avoid duplicative litigation. *Id.* at 8. Regarding the MSN litigation, Vifor does not dispute that there

[1] Of those cases, two have been tried and one has completed claim construction briefing. *Id.* at 7–8.

will be overlap in the facts. Instead, Vifor argues that the supplier relationship is "of no consequence" because Orbicular will have the necessary documents and witnesses in its possession. *Id.* Vifor also argues that the MSN litigation is much further along than this case is, so it would make more sense to consolidate this case with the other case currently pending in the District of Delaware to maximize judicial efficiency. *Id.*

In its reply, Orbicular explains that the two pending MSN actions have been consolidated and that the pretrial schedule proposed by the plaintiffs for the consolidated action pushes back the close of discovery and the subsequent deadlines. Dkt. No. 28 at 2, 6–7. Therefore, Orbicular concludes, the MSN litigation is not so far along that it would be difficult to coordinate or consolidate with this litigation. *Id.* at 8. Orbicular further notes that all the patents asserted against Orbicular in this litigation have also been asserted against one or both MSN entities. *Id.* at 2. Therefore, each patent asserted here will be addressed in the MSN litigation. Finally, Orbicular disputes that it has control over all relevant documents and witnesses with information regarding the API because the MSN entities, not Orbicular, manufacture the API. *Id.* at 4. Given that Orbicular will need discovery from the MSN entities, Orbicular argues that the Orbicular and MSN litigation should all be before the same court so that discovery can be coordinated. *Id.* at 5.

I agree with Orbicular that there are efficiencies to having the Orbicular and the MSN litigation proceed before the same court. First, each patent asserted here has also been asserted in the MSN litigation. *Compare* Dkt. No. 1 at ¶ 1 *with Vifor (International) AG et al v. MSN Laboratories Private Limited et al.*, 3:25-cv-3286, Dkt. No. 1 at ¶ 1. There are likely to be disputes that arise in both this case and the MSN litigation, such as shared claim construction issues. Having those disputes resolved by the same court conserves judicial resources and minimizes the risk of inconsistent outcomes. Second, witnesses associated with the MSN entities will likely need

to testify both in this proceeding and in the MSN litigation, so there are efficiencies in coordinating discovery, and possibly trial, of this case with the MSN litigation, especially given that the two actions against the MSN entities have already been consolidated. Finally, the schedule entered in the consolidated action has been designed to accommodate the action filed on April 25, 2025, so the MSN litigation is not meaningfully further along in the litigation process than this case, which was filed within days of the April 25, 2025, action. *See American Regent, Inc. v. MSN Lab'ys Private Ltd.*, No. 3:24-cv-10674, Dkt. No. 61 (setting fact discovery deadline as April 10, 2026, and trial for February 2027). And the 30-month stay in the MSN litigation expires only 9 days before the stay in this case expires. *Compare id.* (expiration date of September 12, 2027) *with* Dkt. No. 3 (expiration date of September 21, 2027).

Given the overlap between this case and the MSN litigation, this factor weighs heavily in favor of transfer. *See AstraZeneca AB v. Mylan Pharms. Inc.*, No. CV 18-1562-CFC, 2019 WL 5295372, at *8 (D. Del. Oct. 18, 2019) (granting motion to transfer to district where litigation between the plaintiff and a different generic manufacturer was pending that involved "the same ANDA and ANDA product as AstraZeneca's claims against Mylan," because "judicial economy requires that AstraZeneca's claims against Mylan and 3M be decided together"). Although there is no dispute that the issues in the MSN litigation will not be identical to the issues in this case, the actions are sufficiently similar to warrant transfer. *See, e.g.*, *Bayer Pharma AG v. Watson Lab'ys, Inc.*, No. CIV.A. 14-1804, 2014 WL 2516412, at *8–9 (D.N.J. June 2, 2014) (transferring case to a district in which related ANDA litigation was proceeding); *Azurity Pharms., Inc. v. Novitium Pharma, LLC*, No. 22-CV-05860, 2023 WL 358538, at *3–4 (D.N.J. Jan. 20, 2023) (same); *Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*, No. CV 22-7528, 2023 WL 1883357, at *6 (D.N.J. Feb. 10, 2023) ("[T]he Federal Circuit has made clear that a court's familiarity with related patents and

facts from prior litigation—separate and apart from efficiencies gained by consolidation with pending litigation—is a valid factor for purposes of a motion to transfer." (citing *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) and collecting cases)).

**iii. Court Congestion**

The third public interest factor is the relative court congestion in the two districts. Orbicular identifies various statistics about the number of open patent cases in each district and number of "active senior" judges available in each district to share in the caseload. Dkt. No. 15 at 9–10. Based on those statistics, Orbicular argues that the District of New Jersey is less congested than the District of Delaware, a factor that weighs in favor of transfer. *Id.* Vifor responds that this case has recently been assigned to a visiting judge with a smaller district court docket than the active judges in Delaware, which weighs against transfer. Dkt. No. 23 at 11. Orbicular replies that, if this case were transferred, I would be free to take on cases that actually belong in the District of Delaware, thereby further reducing the congestion in that district.

As Orbicular notes, in 2024 there were 612 weighting filings per judge in the District of Delaware and 674 weighted filings per judge in the District of New Jersey. Dkt. No. 15, Exh. B (comparison of districts within the Third Circuit); *see also id*. at 9. Orbicular tries to minimize those numbers by arguing about the total number of judges or total number of open patent cases. *Id.* at 10. But what the weighted filings make clear is that both districts are extremely busy. Although statistics indicate that weighted per-judge caseloads in the District of Delaware are slightly lower than in the District of New Jersey, I find that the relative court congestion in the two districts does not weigh decidedly in favor of either forum. Accordingly, this factor is neutral.

**iv. Local Interest**

The fourth public interest factor is the local interest in deciding local controversies at home. Courts in this district have held that the "local interest" factor is typically neutral in patent cases because in general a patent infringement action is "more properly described as a national controversy." *Schubert v. Cree, Inc.*, No. 12-922, 2013 WL 550192, at *6 (D. Del. Feb. 14, 2013). In *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 375 (D. Del. 2012), Judge Robinson explained why that is the case:

> [P]atent litigation does not constitute a local controversy in most cases. Patent cases implicate constitutionally protected property rights. The resolution of patent cases is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature. Moreover, to characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases.

I find the courts' reasoning in *Schubert* and *Helicos* to be persuasive, and I thus conclude that this factor is neutral.

**v. Public Policies**

The fifth public interest factor relates to the public policies of the respective districts. It is generally accepted that "Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts." *Williamsburg Furniture, Inc. v. Lippert Components, Inc.*, No. 19-1993, 2020 WL 331119, at *6 (D. Del. Jan. 21, 2020). However, when the plaintiff is not a Delaware corporation, and the defendant "does not want to litigate here," courts treat this factor as neutral. *Id.* Moreover, other courts in this district have observed that the public policy of encouraging Delaware corporations to litigate in Delaware "generally applies to the use of Delaware's state courts," and not to the District of Delaware, because patent infringement claims "are resolved in the same manner and under the same Federal Rules of Civil Procedure and Evidence" in every federal district court. *Express Mobile, Inc. v. Web.com Group, Inc.*, 19-1936,

2020 WL 3971776, at *5 (D. Del. July 14, 2020) (quoting *MEC Resources*, 269 F. Supp. 3d at 228). For those reasons, this factor is neutral.

**vi. Familiarity with State Law**

The sixth public interest factor is the familiarity of the trial judge with the applicable state law in diversity cases. Because this is not a diversity case that would require the application of state law, this factor is neutral. *See Take2 Techs. Ltd. v. Pac. Biosciences of California, Inc.*, No. CV 22-1595, 2023 WL 4930359, at *10 (D. Del. Aug. 2, 2023).

**d. Balancing the Factors**

In sum, one private interest factor weighs against transfer, one weighs in favor of transfer, and the remaining four are neutral. One public interest factor weighs heavily in favor of transfer, and the remaining factors are neutral. Balancing the factors, I find that the factors weigh heavily in favor of transfer. Therefore, I conclude that Orbicular has satisfied the standard for obtaining a transfer under section 1404(a). The motion for transfer will be granted.

IT IS SO ORDERED.

SIGNED this 22nd day of August, 2025.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE